**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 09-190-DLB**

**ROSE CHRISTINE ASH, Administrator**                                       **PLAINTIFF**
for the Estate of Randy Cecil Jackson

vs.                      **MEMORANDUM OPINION AND ORDER**

**BOONE COUNTY, KENTUCKY, ET AL.**                                         **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff Rose Christine Ash ("Ash"), as Administrator of the Estate of Randy Cecil Jackson ("Jackson"), initiated this § 1983 action against Defendants Boone County, Edwin Prindle ("Prindle"), individually and in his official capacity as Boone County Jailer[1], and Unknown Deputy Jailers 1-10, alleging a constitutional violation of Decedent's Fourteenth Amendment due process rights. Against Boone County, Plaintiff has additionally raised state law claims for negligence and wrongful death. Against Prindle and the Unknown Deputy Jailers 1-10, Plaintiff has also raised a constitutional violation of Decedent's Eighth Amendment right to be free from cruel and unusual punishment, civil conspiracy, and several state law claims, including negligence, wrongful death, intentional infliction of emotional distress, and civil conspiracy to violate Decedent's Kentucky constitutional rights. Finally, against Unknown Deputy Jailers 1-10, Plaintiff alleges state law claims of assault

---

[1] A suit against an individual in his official capacity is the same as a suit against the governmental entity. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 68 (1989)). Therefore, the claim against Prindle in his official capacity will be treated as a claim against Boone County.

and battery.  The claims brought against each of the Defendants relate to Decedent's death on August 9, 2009, five days after his release from Boone County Jail ("the Jail"). The Court has federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. # 23).  The motion has been fully briefed (Docs. # 23, 25, 26) and is now ripe for review. For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED**.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On the night of July 31, 2009, several people were gathered at Jackson's residence in Covington, Kentucky.  All those in attendance agreed that Jackson was extremely intoxicated.  *Id.*  At some point in the night, Jackson drunkenly staggered from his seat on the couch to the front door and attempted to go outside.  While the specifics of what transpired next are disputed, all witnesses agreed that Jackson fell from the front stoop, down one or two steps, and landed face first on the concrete sidewalk.  He suffered a laceration to his nose and two black eyes and was bleeding from his head.  Two of the witnesses also believed that Jackson lost consciousness for a period of time.  Jackson's friend, Peggy Hunley, attempted to help him to his feet, but he fell to the ground a second time.

As Hunley attempted to help Jackson off the ground, Jackson's dog attacked Hunley and bit her arm, tearing out a large piece of flesh.  Another guest called 911, and a Covington police officer arrived at the scene and assisted Hunley in seeking medical care. After the incident, the Covington Police Department learned that Jackson had an active

warrant for his arrest from Boone County for failing to appear at a hearing on a flagrant non-support charge. Thereafter, on August 3, 2009, the Covington Police Department arrested Jackson at his home and took him to the Kenton County Detention Center (KCDC) where he remained for the night.

At the time of booking, Jackson had a visible laceration on his nose and bruising around his eyes. He did not request any medical attention or advise KCDC staff that he had any urgent medical problems besides high blood pressure, five "busted" discs in his back and asthma/bronchitis. KCDC staff placed Jackson in a holding cell where he remained until a Boone County Sheriff's deputy transported him to Boone County Jail the following morning.

Jackson arrived at Boone County Jail on August 4, 2009 at approximately 8:30 a.m. Similar to his booking photograph at KCDC, the booking photograph taken at Boone County Jail also depicts the previous injuries to Jackson's nose and face. Upon admission, Jackson reported that he was pushed down a set of steps and refused medical treatment. Besides noting a history of shortness of breath, asthma and high blood pressure, Jackson did not notify the Jail personnel of any other serious medical conditions. Jackson remained in holding for the rest of the day[2], and there are no reports or files indicating that any significant events occurred during his incarceration. Moreover, video footage of the holding cell in which Jackson was held does not depict any violent episodes or encounters.[3]

---

[2] At approximately 3:30 p.m., Jackson was taken out of the holding cell for approximately thirty minutes to be processed into the Jail's system. After his processing, Jackson was moved to Cell 329.

[3] The record does not contain any video footage of Jackson's time in Cell 329.

3

At approximately 6:30 p.m. that night, someone posted Jackson's bond, and he was escorted from his cell to the booking area for release.  While he was standing at the booking counter, Jackson suddenly yelled out, fell backwards, hitting his head on the tile floor, and began seizing.  Several members of the Jail staff rushed to his assistance and administered first aid.  Medical assistance was called, and an ambulance arrived shortly thereafter.  Jackson was then transported to the emergency department at St. Luke Hospital West in Florence, Kentucky.  During transport, Jackson had another seizure and arrived at the hospital in an unconscious state.

In the emergency room, Jackson suffered two further seizures.  The emergency room records indicated that Jackson remained responsive only to pain.  A CT scan of the head revealed bifrontal and bitemporal subarachnoid hemorrhage secondary to trauma.

Shortly after Jackson's arrival, several of his family members also arrived at the emergency room.  When Ash was allowed to see her son, the hospital staff told her that he was unconscious.  Ash testified that Jackson was not able to speak and "had blood running out the back of his head and out of his mouth and all down the side of his face and neck."  Upon seeing Jackson she asked him: "Did the jailers do this to you?  If they did, squeeze my hand," and he responded affirmatively by squeezing her hand.  (Doc. # 29-1, at 17).

Given the severity of Jackson's injuries, he was transported to the University of Cincinnati Hospital's Emergency Department for a neurosurgery evaluation.  At his admission, another CT scan of the head was taken which again showed a subarachnoid hemorrhage.  Jackson was described as being in "critical condition."  By August 8, 2009, Jackson's condition had deteriorated significantly and his prognosis for recovery was grim.

4

Ash testified that the doctors told her that Jackson was "brain dead, his brain was like ground-up hamburger ...and that he was not responding like he should." (Doc. # 29-1, at 19). Accordingly, his family made the decision to remove Jackson from life-support. *Id.* He was pronounced dead at approximately 8:00 a.m. on August 9, 2009.

Despite his critical and seemingly unresponsive condition, Jackson's family members testified that during his time at University Hospital, he again responded to several of their statements by squeezing their hands. According to Ash, she repeated the same question that she had posed to Jackson at St. Luke's Hospital every day until his death on August 9, 2009. Each time, she claimed that Jackson gave her an affirmative response by squeezing her hand; although, she conceded that he did not respond at all in the last two days before he died.

The Hamilton County Coroner performed a postmortem examination of Jackson's body on August 10, 2009 and determined the cause of death to be "[b]lunt impacts of head with skull fractures and injuries of brain." (Doc. # 23-20). The autopsy report also noted the following injuries: abrasions and contusions of the head, torso and extremities; laceration to the bridge of the nose; subscalpular hemorrhages to the right parietal and left temporal regions; fractures to the bilateral temporal and occipital bones; subdural and subarachnoid hemorrhage; contusions necroses of the bilateral frontal and temporal poles; an intraventricular clot of the lateral ventricles; and cerebral edema.

After Jackson's death, the Covington Police Department and the Boone County Sheriff's Department began a joint investigation into Jackson's death. The investigation found that Jackson's death was causally related to his falls on July 31 and August 4, 2009. *Id.* No evidence was found that any unlawful force was used on Jackson during his

incarceration at the Boone County Jail. Plaintiff has produced no credible evidence to the contrary.

## II. ANALYSIS

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The "moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). The moving party may meet this burden by demonstrating the absence of evidence concerning an essential element of the nonmovant's claim on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, it must produce specific facts showing that a genuine issue remains. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). If, after reviewing the record in its entirety, a rational fact finder could not find for the nonmoving party, summary judgment should be granted. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).

### B.   Plaintiff's Claims Against Defendants Unknown Deputy Jailers 1-10

Defendants assert that Plaintiff's claims against Unknown Deputy Jailers 1-10 must be dismissed because Plaintiff has yet to identify these "unknown" defendants or serve them with civil summonses and the Complaint. Federal Rule of Civil Procedures 4(m) states, in pertinent part:

> If a defendant is not served within 120 days after the complaint is filed, the court ... must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Plaintiff filed her Complaint on November 11, 2009. (Doc. # 1). After an extension of the original discovery deadline, Plaintiff had until August 31, 2011 to complete discovery. (Doc. # 21). Despite the lengthy discovery period, Plaintiff has yet to identify Unknown Deputy Jailers 1-10 and, therefore, failed to serve them with civil summonses and the Complaint, clearly in violation of the time limit provided by Rule 4(m). Plaintiff has been given ample time to conduct discovery and obtain the names of the unknown deputy jailers and has not shown good cause for her failure to effectuate service. Accordingly, any claims asserted against Defendants Unknown Deputy Jailers 1-10 must be dismissed. *See*

*Petty v. Cnty. of Franklin,* 478 F.3d 341, 345-46 (6th Cir. 2007).

Furthermore, although Rule 4(m) provides that the claims should be dismissed without prejudice, Plaintiff's claims will be dismissed with prejudice because even if she was allowed to re-file her claims, they would be barred by the applicable statute of limitations.  *See id.* at 346 n.3 (quoting 3 Moore's Federal Practice § 4.82[3] ("[A]ny dismissal ordered [under Rule 4(m)] after expiration of the statute of limitations for failure to establish good cause will be, in effect, with prejudice since plaintiff will be precluded from commencing a new action.")).  Since § 1983 contains no statute of limitations, federal district courts apply the applicable state statute of limitations "for the cause of action most similar to the underlying claim in the § 1983 action."  *Shepherd v. Wellman*, 313 F.3d 963, 971 (6th Cir. 2002) (citing *Wilson v. Garcia*, 471 U.S. 261, 266-69 (1985)).

In this case, the § 1983 action is properly characterized as a wrongful death action. Generally, an action for personal injury in Kentucky must be brought within one year after the cause of action accrued.  K.R.S. § 413.140(1)(a).  Kentucky courts have held that this statute of limitations also applies to wrongful death actions, as the wrongful death statute, K.R.S. § 411.130, does not contain any limitation.  *Gaither v. Commonwealth*, 161 S.W.3d 345 (Ky. Ct. App. 2004).  Pursuant to K.R.S. § 413.180(1), when a personal representative is appointed within one year from the date of death, the personal representative has one year from the date of appointment within which to bring a wrongful death claim or any surviving claim of the decedent.  In the present case, Plaintiff was appointed administrator of Jackson's estate on November 9, 2009, well within one year of Plaintiff's death on August 9, 2009.  Therefore, the limitations period for Plaintiff's federal and state law claims expired on November 9, 2010.

8

### C. Plaintiff's § 1983 Claim

Section 1983 specifically authorizes "any citizen of the United States or other person within the jurisdiction thereof" to pursue "an action at law [or] suit in equity" against every person who under color of state law "causes...the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983; *Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002). To state a claim under § 1983, a plaintiff must establish both that the defendant acted under color of state law and deprived him of a federal statutory or constitutional right. *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 33 (6th Cir. 1992).

In the present case, Plaintiff alleges that Defendants deprived Jackson of his constitutional rights during his incarceration at Boone County Jail by using excessive force against him. Specifically, Plaintiff alleges that on August 4, 2009, Defendant Unknown Jailers severely beat Jackson causing blunt force trauma to his head, resulting in his death on August 9, 2009. Despite the fact that Plaintiff alleges constitutional violations of Jackson's Eighth and Fourteenth Amendment rights, because Jackson was a pretrial detainee[4], as opposed to a convicted prisoner, he may only bring his excessive force claim under the Fourteenth Amendment's Due Process Clause[5], which "protects a pretrial

---

[4] The Supreme Court has defined a "pretrial detainee" as someone who has had a "judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest." *Wolfish*, 441 U.S. at 536 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975)).

[5] In their Motion for Summary Judgment, Defendants assert that, as a pretrial detainee, Plaintiff was protected by the Fourth Amendment's proscription against the use of excessive force, citing to the Sixth Circuit's recent decision in *Aldini v. Johnson*, 609 F.3d 858, 866-67 (6th Cir. 2010). In *Aldini*, the Court held that the district court erred in applying the Fourteenth Amendment to an arrestee detained following a *warrantless* arrest and prior to a probable-cause hearing. 609 F.3d at 867. However, in the instant case, Jackson was arrested pursuant to a warrant for failing to appear at a flagrant non-support hearing, and, thus, probable cause had already been

9

detainee from the use of excessive force that amounts to punishment." *Leary v. Livingston Cnty.*, 528 F.3d 438, 443 (6th Cir. 2008) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). Because the Eighth Amendment is only concerned with punishment by the state "after it has secured a formal adjudication of guilt in accordance with due process of law," *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977), it does not apply to pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979).

### 1. Fourteenth Amendment Excessive Force Claim

As stated above, to state a claim under § 1983, a plaintiff must set forth specific facts to establish a constitutional deprivation occurred. *Marvin v. City of Taylor*, 509 G.3d 234, 243 (6th Cir. 2007). While the law is unsettled as to whether the Fourteenth Amendment provides pretrial detainees more protections than the Eighth Amendment, an excessive force claim under either constitutional guarantee requires proof that some actual force was used. *Leary*, 528 F.3d at 443; *see also Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (Eighth Amendment); *Bell*, 441 U.S. at 539 n.21 (Fourteenth Amendment). Defendants argue that Plaintiff has failed to present any credible or admissible proof that force was actually used against Jackson during his brief incarceration at the Boone County Jail. Defendants' argument is well-taken.

The record is simply devoid of any evidence showing that any unknown jailers or Jail personnel used force against Jackson during his incarceration. Jackson's inmate file and the video footage do not contain any incidents where force was used. Plaintiff has also not

---

determined. *See* U.S. Const. amend IV ("[N]o Warrants shall issue, but upon probable cause ... ."). Accordingly, Plaintiff's excessive force claim will be analyzed under the Fourteenth Amendment.

submitted any deposition testimony to this effect.  Moreover, the record reveals that Jackson suffered two head injuries prior to his death that were not caused by any use of force by Jail staff.  On July 31, 2009, three days prior to his arrest, Jackson fell off his front porch and landed face first on the concrete sidewalk.  He suffered a laceration to his nose and two black eyes, was bleeding from his head, and appeared to have lost consciousness for a period of time.  Additionally, on August 4, 2009, while Jackson was waiting to be released from Boone County Jail, he fell backwards, struck his head on the tile floor, and began seizing.  Neither incident can be attributed to the use of force by Jail personnel.

In her response, Ash relies exclusively on the doctrine of *res ipsa loquitur* to support her claims against Defendants.  The doctrine requires that (1) the defendant must have had full management of the instrumentality which caused the injury; (2) the circumstances must be such that, according to common knowledge and the experience of mankind, the accident could not have happened if those having control and management had not been negligent; and (3) the plaintiff's injury must have resulted from the accident.  *Vernon v. Gentry*, 334 S.W.2d 266, 268 (Ky. 1960).  However, it is well-settled that *res ipsa loquitur* does not apply to § 1983 excessive force claims, because the standard of care is not negligence.  *Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006); *see also Hunt v. Chiovari v. Dart*, 754 F. Supp. 2d 962, 977 (N.D. Ill. 2010) (Despite the lack of evidence indicating that force was used on decedent during his incarceration, Plaintiff alleged that force must have been used because an expert opined that decedent's death was caused by blunt force trauma to the head; however, the court rejected this theory and held that a § 1983 excessive force claim requires proof that some specific unconstitutional act

11

occurred which caused the alleged injuries.). Rather, the Fourteenth Amendment is only concerned with the "use of excessive force that amounts to punishment." *Leary*, 528 F.3d at 443 (quoting *Graham*, 490 U.S. at 395 n.10); *see also Cnty. Of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.").

Accordingly, because Plaintiff has failed to show that any force was used on Jackson during his incarceration at Boone County Jail, she cannot prove that Jackson suffered a constitutional deprivation and her § 1983 claim must fail.[6] However, even assuming that a constitutional deprivation occurred, Plaintiff cannot show that Defendants Prindle and Boone County are liable for that deprivation.

### 2. Plaintiff's § 1983 Claim Against Defendant Edwin Prindle

Under § 1983, a supervisor is not liable for a constitutional deprivation, unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009) (quoting

---

[6] Plaintiff also alleges that Defendant Prindle and the unknown jailers "had an unlawful and corrupt combination or agreement amongst themselves to beat [Jackson] and/or to cover up the unlawful beating." (Doc. # 1, at ¶ 88). A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007). In order to prove a civil conspiracy, a plaintiff must demonstrate that "(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the Plaintiffs of their constitutional rights, and (3) an overt act was committed." *Id.* (citation omitted). However, a civil conspiracy claim is dependent on the underlying constitutional claim. *See Scott v. Stone*, 254 F. App'x 469, 474-75 (6th Cir. 2007) (citing *Torress-Rosado v. Rotger-Sabat*, 335 F.3d at 1, 14 (1st Cir. 2003) ("To demonstrate conspiracy under § 1983, plaintiff must show an actual abridgment of some federally-secured right."); *Vaden v. Village of Maywood*, 809 F.2d 361, 366 (7th Cir. 1987) ("To state a claim for relief under [§ 1983], [plaintiff] must allege no only that the defendants conspired under color of state law to deprive her of her constitutional rights, but also that she was in fact deprived of those rights.")). Not only has Plaintiff failed to provide evidence of any agreement between Prindle and the unknown jailers to use excessive force against Jackson, but she has also failed to prove that Jackson suffered a constitutional deprivation. Therefore, Plaintiff's civil conspiracy claim must fail.

12

*Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). This requires a plaintiff to prove that the supervisor "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* (quoting *Shehee,* 199 F.3d at 300). Supervisor liability "cannot attach where the allegation of liability is based upon a mere failure to act." *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).

Plaintiff alleges that Defendant Prindle "failed to maintain or enforce adequate policies and procedures concerning the treatment and rights of detained individuals in his custody" and "failed to provide adequate training to law enforcement members under his control." (Doc. # 1, at ¶¶ 10, 11). As stated above, the mere failure to act is insufficient to prove supervisory liability under § 1983. Plaintiff has failed to produce any evidence that Prindle was present at the Jail on August 4, 2009, participated in, encouraged or was even aware of the alleged constitutional violations. Furthermore, Prindle would be entitled to qualified immunity because there is no clearly established law indicating that a supervisor can be held individually liable for the actions of his subordinates without proof that he ordered, participated in, or actively condoned the constitutional violations. *Summers v. Leis*, 386 F.3d 881, 888 (6th Cir. 2004).

### 3. Plaintiff's § 1983 Claim Against Defendant Boone County

The liability of local government entities cannot be premised on a theory of *respondeat superior*. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 505-06 (6th Cir. 1996). Therefore, a governmental entity can only be held liable on the basis of its own conduct. *Id.* at 507. To prevail on a § 1983 claim against a municipality, a plaintiff must establish:

(1) that he suffered a deprivation of a constitutionally protected interest; and (2) the alleged deprivation was caused by an official policy, custom, or usage of the municipality. *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

The *Monell* court described a municipal policy as including "a policy statement, ordinance, regulation, or decision officially adopted and promulgated." 436 U.S. at 690. However, a custom "has not received formal approval through ... official decision making channels." *Id.* at 690-91. The plaintiff may establish the existence of a custom by showing that policymaking officials knew about and acquiesced in the practice at issue. *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004). Moreover, under § 1983, a plaintiff may only hold a governmental entity liable where its official policy or custom was the "moving force" behind the deprivation of an individual's constitutional rights. *Monell*, 436 U.S. at 694. A plaintiff may look to the following to establish an illegal policy or custom: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

Besides a general statement in the Complaint alleging that "Boone County failed to ensure that the Boone County Jail was operated in compliance with United States law and regulation, Kentucky law and regulation, the United States Constitution, the Kentucky Constitution, and local ordinances and regulations," Plaintiff not only fails to identify an official custom or policy of Boone County with respect to Jackson's constitutional claims

14

but also fails to present facts that any such policy existed. Additionally, even assuming there was a custom or policy of the County, Plaintiff did not put forth any facts demonstrating how Jackson's injuries were causally linked to the County's custom or policy. Consequently, Plaintiff's municipal liability claim against Defendant Boone County fails as a matter of law.

### D. Plaintiff's State Law Claims

#### 1. Plaintiff's State Law Claims Against Defendant Edwin Prindle

##### I. Civil Conspiracy to Violate Jackson's Kentucky Constitutional Rights

In her Complaint, Ash alleges that Prindle conspired to violate Jackson's constitutional rights under the Kentucky Constitution. Defendants argue that there is no cause of action for the recovery of damages from Defendant Prindle for alleged violations of the Kentucky Constitution.

As noted above, Plaintiff has failed to present any evidence that Prindle engaged in any conduct that would violate Jackson's constitutional rights and, similarly, has failed to submit proof that Prindle conspired to commit such violations. Moreover, Plaintiff has failed to direct this Court to any authoritative source providing for a civil claim for damages for a conspiracy to violate Jackson's Kentucky constitutional rights. There exists no statute under which private litigants are authorized to pursue a cause of action against state officials for a conspiracy to violate their rights under the Kentucky Constitution, and there is not a Kentucky decision expressly holding that such a right exists. *See Clark v. Commonwealth*, 229 F. Supp. 2d 718, 727 (E.D. Ky. 2002) (Previously, the Court found "[t]he plaintiff does not cite any authority–and the Court can find none–under which he

15

could recover money damages from individuals in their individual capacities for ... violations [of §§ 2 and 10 of the Kentucky Constitution]. Therefore, these claims will be dismissed."). Consequently, Plaintiff cannot recover damages from Defendant Prindle for the alleged conspiracy to violate Jackson's Kentucky constitutional rights.

### ii. Negligence, Wrongful Death and Intentional Infliction of Emotional Distress Claims

For the very same reasons Plaintiff cannot establish a supervisor liability theory under § 1983, Plaintiff cannot establish negligence, wrongful death, and/or intentional infliction of emotional distress claims against Defendant Prindle. Under Kentucky law, "[p]ublic officials are responsible only for their own misfeasance and negligence and are not responsible for the negligence of those who are employed by them." *Franklin Cnty. v. Malone*, 957 S.W.2d 195, 199-200 (Ky. 1997), *overruled on other grounds by Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001). Moreover, in order to apply *res ipsa loquitur*, there must be some evidence that Prindle himself "had full management of the instrumentality which caused the injury ... ." *Vernon*, 334 S.W.2d at 268. Plaintiff has not presented any proof that Prindle engaged in tortious conduct or that he had full management of the instrumentality that caused Jackson's injuries, and, therefore, the state law tort claims against him will be dismissed.

### 2. Plaintiff's State Law Claims Against Defendant Boone County

Plaintiff's claims against Boone County fail because the County, a political subdivision of the state, "is cloaked sovereign immunity." *Schwindel v. Meade Cnty.*, 113 S.W.3d 159, 163 (Ky. 2003). "[A] county, absent a legislative waiver of immunity, [cannot] be held vicariously liable in a judicial court for the ministerial acts of its agents, servants,

and employees." *Id.* (internal quotations omitted).  Because the Kentucky legislature has yet to waive immunity for counties, Defendant Boone County is entitled to summary judgment on Ash's state law claims.

### III.   CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. # 23) is hereby **GRANTED**.

This 22nd day of September, 2011.



Signed By:
*David L. Bunning*   DB
United States District Judge

G:\DATA\Opinions\Covington\2009\2-09-190 MOO Granting MSJ.wpd